UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CLAUDE SANDERS,

Plaintiff,

v.

UNKNOWN JENSEN et al.,

Defendants.

Case No. 1:24-cv-1025

Honorable Ray Kent

# OPINION

This is a civil rights action brought by Plaintiff Claude Sanders under 42 U.S.C. § 1983. Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, the parties have consented to proceed in all matters in this action under the jurisdiction of a United States Magistrate Judge. (ECF Nos. 1, 19.) This matter is before the Court on a motion for summary judgment filed by Defendants. (ECF No. 21.) For the reasons set forth below, the Court will grant Defendants' motion for summary judgment and dismiss this action with prejudice as frivolous.

## Discussion

### I. Factual and Procedural Background

Plaintiff is incarcerated with the Michigan Department of Corrections (MDOC) at the Carson City Correctional Facility (DRF) in Carson City, Michigan. He is presently serving a consecutive sentence string of 17 to 32 years imposed by the Wayne County Circuit Court on April 19, 2013, following Plaintiff's *nolo contendere* plea to charges of second-degree murder and felony firearm. *See* MDOC Offender Tracking Information System (OTIS),

https://mdocweb.state.mi.us/otis2/search (enter First Name "Claude," Last Name "Sanders," select Search, select Offender Number 872470) (last visited Oct. 6, 2026).[1]

Plaintiff's unverified statement of claim, in its entirety, reads as follows:

> On 04-18-24 Piggott and Barna forced me out my cell with no shoes on and walked me to base where Jensen was waiting tried to force me to put shoes on that was worn by another prisoner when I refused, they took me into the Housing Unit 1 vestibule and started hitting me in the face, ribs, stomach, leg and picking me up by my jaw line, after this was done they drug me outside and continued to beat on me picking me up by my jaw line and putting there hands around my neck. While going to the property room where transportation was waiting for me they continued to abuse me by bending my legs when I got to the property room one of the C/O's punched me in the face and started bending my arm downward through the slot. This all happen on camera approx. 8:00 to 8:30 A.M

(Compl., ECF No. 1 PageID.3.) Plaintiff seeks damages in the amount of $1,300,000.00. (*Id*., PageID.4.)

Following preliminary review of the complaint under the Prison Litigation Reform Act, the Court dismissed certain claims and certain parties. (Op., ECF No. 4, PageID.22.) The only claims that remain are Plaintiff's Eighth Amendment claims against Defendants Jensen, Piggott, and Barna for the use of excessive force during their escort of Plaintiff from his cell to the IBC property room. (*Id*.)

Defendants have moved for the entry of summary judgment in their favor on two grounds: first, considering the evidence they have presented to the Court, there are no genuine issues of material fact regarding the merits of Plaintiff's Eighth Amendment claim and they are

[1] This Court takes judicial notice of the information provided by a search of the MDOC's OTIS website with regard to Plaintiff. *See, e.g., United States v. Alexander*, 543 F.3d 819, 824 (6th Cir. 2008); *Carpenter v. Mich. Dep't of Corr. Time Computation Unit*, No. 1:13-cv-313, 2013 WL 1947249, at *1 n.1 (W.D. Mich. May 9, 2013); *Ward v. Wolfenbarger*, 323 F. Supp. 2d 818, 821–22 n.3 (E.D. Mich. 2004).

entitled to judgment as a matter of law; and second, they are shielded from liability under the doctrine of qualified immunity.

In support of Defendants' motion, they have submitted the following: Plaintiff's grievance regarding the incident (ECF No. 22-2), excerpts from Plaintiff deposition transcript (ECF No. 22-3), the IBC critical incident reports regarding the escort (ECF No. 22-4), documents, including the hearing report, relating to the assault and battery misconduct charge filed against Plaintiff relating to the escort (ECF No. 22-5), documents, including the hearing report, relating to the threatening behavior misconduct charge filed against Plaintiff relating to the escort (ECF No. 22-6), the surveillance video of the escort (EECF No. 22-7), Defendant Piggott's verified declaration regarding the escort and the video (ECF No. 22-8), and MDOC policy directive 03.03.105, regarding prisoner discipline. Plaintiff has not responded to, or otherwise opposed, Defendants' summary judgment motion.

Defendant Piggott's verified declaration states:

> 4. On April 18, 2024, I was working in Housing Unit 1 at IBC. Plaintiff was housed in Unit 1 and was scheduled to be transferred to another prison that morning. Shortly after 8 a.m., Sanders was escorted to the Housing Unit 1 pod area by me and CO Barna, where CO Jensen provided Sanders shoes, and instructed Sanders to put on the shoes for his walk to the Property Room. Sanders refused multiple orders to put on the shoes and refused to walk to the Property Room. Sanders then made his body limp and fell to his knees resisting our attempts to escort him. Lieutenant Fuller and Sergeant Camp were radioed and arrived on scene. They also instructed Sanders to stand up and walk to the Property Room, and Sanders refused to follow their orders as well.
>
> 5. Because of Sanders' refusal to walk, a wheelchair was retrieved, and Sanders was ordered to stand up and get into the wheelchair. Sanders refused this order. After Sanders' repeated refusals to walk or get into a wheelchair, staff picked Sanders up and placed him in the wheelchair. Sanders' winter hat was then pulled over his face after Sanders threatened to spit on us. Sanders was then wheeled to the Property Room, where he was placed in a holding cage module.
>
> 6. During this incident, only required proper force was used. Sanders was never punched, choked, or struck in any manner.

(Piggott Decl., ECF No. 22-8, PageID.159–160.)

Because Plaintiff has not responded to Defendants' motion, he has not provided a verified declaration that is contrary to Defendant Piggott's. Plaintiff's complaint is not verified; Plaintiff's grievance statements are not verified. Nonetheless, there is sworn testimony from Plaintiff in the record in the form of his deposition testimony. Moreover, the questioning of Plaintiff was guided by the statements he provided in his grievances, particularly the description he provided on August 21, 2024, that is attached to Plaintiff's grievance, (ECF No. 22-2, PageID.93), and to his deposition, (ECF No. 22-3, PageID.118). The description reads as follows:

> On April 18, 2024, I was assaulted by the following staff at IBC. CO's Jensen, CO. Piggot, CO. Burna of 1st Shift, (Unknown Lt), (Unknown Sgt.), all used excessive use of force on me. They forced me to come out of my cell without shoes and walk down on base barefoot. When I refused to put on these shoes previously worn by another prisoner who I know previously had the same shoes and showered in them, I was suddenly taken into 1 unit Vestibule area a blind spot and was forced to the ground. They then began beating & attacking me. There was suddenly an enormous amount flurry's of punches came from everywhere hitting me all over. I was struck in the face, ribs, stomach, legs. I was picked up by my jaw line. After this stopped/ended. I was dragged outside where they all continued to use excessive force by picking me up forcefully by my jaw-line. I was now being choked I thought this was the end of my life. Staff had there hands around my neck. I couldn't breath. I was taken to the IBC Property Room. where they had Transportation who was awaiting me. I was being continuously hit, struck & punched. Staff struck me, staff was bending my legs. While inside the property room, I was struck in the face multiple times, staff was bending my arms as well. after placing me in the cage. This bending my arm was in a downward motion, & position pulling it. All of these acts were in fact caught on camera. I would like for the camera footage to be scrubbed & reviewed for fact checking, and truthfulness in order for me to be able to filing my legitimate complaint. These acts happened and occurred between 8:00-8:30 A.M. Est.

(*Id.*) Plaintiff's deposition testimony tracked his written statement (Sanders Dep. Tr., ECF No. 22-3, PageID.103–116.) Thus, there is sworn testimony from Plaintiff in the record that cannot be reconciled with the verified testimony of Defendant Piggott.

But Defendant Piggott's declaration did not end with his own recollection of the event. He also reviewed the surveillance video recording of the entire escort:

7. Video of Sanders' staff resistance and escort to the Property Room on April 18, 2024, was captured by IBC surveillance video. I have personally reviewed this video footage which shows the relevant events which Sanders' allegations are based upon. I appear in the video footage, and I can confirm that it is a true and accurate depiction of the relevant events on April 18, 2024.

8. The video footage is date and time stamped and shows the following:

• The video starts at approximately 8:05:40 a.m. Sanders (blue coat with orange winter hat) is escorted into the pod area of Housing Unit 1, which is next to the vestibule area. Sanders is escorted by CO Barna (grey short sleeve shirt and black hat) and me (black long sleeve shirt and black hat). CO Jensen (black long sleeve shirt with no hat) walks through a door a places black shoes at Sanders' feet. CO Jensen attempts to have Sanders put on the shoes, but Sanders refuses to move. CO Jenson then picks up the shoes. CO Jensen, on Sanders' left side, and CO Barna, on Sanders' right side, place Sanders into a high escort position, and escort Sanders through a door into the vestibule area, as Sanders makes his body limp and drags his feet. The high escort position is where one officer hooks his right arm under the prisoner's left arm, while another officer hooks his left arm under the prisoner's right arm in order to securely escort a resistant prisoner.

• At approximately 8:06:35, another camera in the vestibule area picks up the incident with no interruption. Sanders stays limp on his knees and continues to refuse to walk as he is escorted towards the door leading outside. CO Jensen attempts to lift Sanders up to his feet, but Sanders braces to the floor. CO Jensen attempts to use a reverse gooseneck pressure point technique on Sanders' left wrist, but Sanders continues to refuse to stand. CO Jensen then calls for assistance over his radio. Lt. Fuller (black jacket with short brown hair) and Sgt Camp (black jacket with shaved head) then arrive. Lt. Fuller talks with Sanders and attempts to convince him to put his shoes on and walk to the Property Room, to which Sanders refuses. I then switch places with CO Barna. With Lt. Fuller's help from the back, CO Jensen, on Sanders' left side, and me on Sanders' right side, we lift Sanders to his feet into the high escort position, and escort Sanders through the vestibule door leading outside, as Sanders drags his feet.

• At approximately 8:10:27, another camera outside near the segregation vestibule door exit picks up the incident with no interruption. Sanders continues to refuse to walk and continues to brace his knees to the ground. A wheelchair is then brought out. Together, CO Jensen, Lt. Fuller, Sgt. Camp, and I lift Sanders into the wheelchair. Sanders then yelled threatening to spit at the staff, so I pulled Sanders' winter hat over his mouth. CO Jenson then pulls the wheelchair as I lift Sanders' leg off the ground.

> • At approximately 8:12:12, another wider view outside camera picks up the incident with no interruption. CO Jensen continues to pull the wheelchair as I hold Sanders' leg from dragging the ground. Lt. Fuller and Sgt. Camp walk beside the escort.
>
> • At approximately 8:13:32, as we enter the 200 Building, which contains the Property Room, another camera picks up the incident with no interruption. The escort proceeds down a hallway as CO Jensen continues to pull the wheelchair and I hold Sanders' leg from dragging the ground. Lt. Fuller and Sgt. Camp continue to walk with the escort.
>
> • At approximately 8:13:56, as we go through a door and enter another hallway, another camera picks up the incident with no interruption. The escort proceeds down a hallway as CO Jensen continues to pull the wheelchair and I hold Sanders' leg from dragging the ground. Lt. Fuller and Sgt. Camp continue to walk with the escort.
>
> • At approximately 8:14:09, we go through a door and enter the Property Room as another camera picks up the incident with no interruption. Several prisoners are seated waiting to be transferred. Correctional Transportation Officers (CTO) are waiting by the holding cage modules. Sanders continues to refuse to walk as he is placed in one of the modules. The module door is shut and the escort is over.
>
> • At approximately 8:15:14, the video ends.

(Piggott Decl., ECF No. 22-8, PageID.160–162.)

Misconduct Hearings Officer and Administrative Law Judge (ALJ) Sutherland also watched the video as part of the hearing on Plaintiff's assault and battery misconduct charge. ALJ Sutherland stated:

> Video shows prisoner in the area behind the bubble. Prisoner refuses to put on a pair of shoes set on the floor in front of him. The staff hold prisoner on each side and move prisoner toward the door without the shoes. Prisoner anchors his feet and refuses to move. Prisoner is moved to a high security position. Prisoner lifts his feet forcing staff to carry him.
>
> * * *
>
> Prisoner stated, "That I didn't do any of that." Prisoner stated he refused to wear the shoes because they belonged to someone else and were not clean. Prisoner denied going to the ground. I summarized video surveillance for prisoner. I asked prisoner if he wished to respond to the video summary. Prisoner replied, "They were dragging me." Prisoner stated his feet were dragging because his socks were

> slipping on the floor. I asked prisoner if there was anything else that he believed I should know or that he wanted me to know. Prisoner replied, "No ma'am."
>
> After advising prisoner of the decision, sanction, and dates, I asked prisoner if he clearly heard everything we discussed.
>
> Prisoner replied, "Yes ma'am."
>
> * * *
>
> ASSAULT AND BATTERY:
>
> Per MDOC PD 03.03.105, Attachment A, Assault and Battery includes physical resistance or physical interference with an employee. Injury is not necessary, but contact is. Prisoner denied physically resisting the officer's escorting him from the building. I find prisoner's argument not credible nor consistent with video. Video showed prisoner anchoring his feet when the officers tried to lead him to the door without shoes. After moving into a high security position, prisoner then lifted his feet forcing staff to carry him. Prisoner argued his socks slipped on the floor. Video contradicts this argument. Video showed prisoner made no effort to stand or walk. Rather, prisoner allowed his feet to drag along the floor limp. I find that prisoner physically resisted and physically interfered with the officers escorting him from the building. Anchoring his feet or refusing to walk and forcing staff to carry him during a physical escort constitutes Assault and Battery. I find prisoner guilty of Assault and Battery. The charge is upheld.

(Misconduct Hr'g Report, ECF No. 22-5, PageID.142.)

The Court has reviewed the surveillance video recording. It blatantly contradicts and utterly discredits Plaintiff's sworn testimony. The recording is consistent with the descriptions offered by Defendant Piggott and ALJ Sutherland.

## II. Summary Judgment Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A material fact is genuinely disputed when there is "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.* at 249 (citing *First Nat'l Bank of Ariz. v. City Serv. Co.*, 391 U.S. 253, 288–89 (1961)). "Putting

all of that together, Rule 56 asks 'whether the evidence is so one-sided that one party must prevail as a matter of law.'" *DeVooght v. City of Warren, Mich*., 157 F.4th 893, 899 (6th Cir. 2025) (quoting *Anderson*, 477 U.S. at 252).

Summary judgment is not an opportunity for the Court to resolve factual disputes. *Id*. The Court "must shy away from weighing the evidence and instead view all the facts in the light most favorable to the nonmoving party and draw all justifiable inferences in their favor." *Wyatt v. Nissan N. Am., Inc.*, 999 F.3d 400, 410 (6th Cir. 2021). Nonetheless, a court need not accept bare legal conclusions couched as factual allegations or unwarranted factual inferences in resolving a motion for summary judgment. *See, e.g., Yanovich v. Zimmer Austin, Inc.*, 255 F. App'x 957, 969 (6th Cir. 2007) ("Even under the generous standard of review for a grant of summary judgment, we do not 'accept as true legal conclusions or unwarranted factual inferences.'").

An opponent of a motion for summary judgment "may not rest upon mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson,* 477 U.S. at 248. The non-moving party "must present affirmative evidence in order to defeat a properly supported motion for summary judgment." *Id*., at 257. Federal Rule of Civil Procedure 56(c) identifies the types of affirmative evidence contemplated: "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). Defendants have provided critical incident reports, misconduct records, verified declarations, and video in support of their motion. Plaintiff has provided a verified declaration in response. (ECF No. 31.)

Even when the Court considers the parties' "verified" statements, the Court need not accept every "verified" statement as true. Federal Rule of Civil Procedure 56 identifies specific requirements for affidavits or declarations used to support or oppose a motion for summary judgment: they "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

It is also important to note that "[e]ven if Rule 56 commands judges to view the facts in the light most favorable to the nonmoving party, it certainly doesn't require [the court] to put blinders on." *DeVooght*, 157 F.4th at 900. It is clear that Plaintiff's version of his encounter with Defendants conflicts with Defendant Piggott's verified account, but that does not end the inquiry.

> When . . . the parties tell conflicting stories, "one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007). This applies not only when there is videotape evidence, but whenever the nonmoving party's version is "so blatantly contradicted by objective evidence in the record that it fails to create a genuine issue of material fact for trial." *Coble*, 634 F.3d at 869.

*Booher ex rel. T.W. v. Montavon*, 555 F. App'x 479, 484 (6th Cir. 2014) (parallel citation and footnote omitted). In considering a motion for summary judgment, the Court may not rely on a party's version of the facts that is "utterly discredited" by the video evidence "such that no reasonable jury could believe him." *Scott v. Harris*, 550 U.S. 372, 380 (2007). Rather, the Court should view the facts "in the light depicted by the videotape." *Id*. at 380–81.

"[T]he standard that a movant must meet to obtain summary judgment depends on who will bear the burden of proof at trial." *Trs. of Iron Workers Defined Contribution Pension Fund v. Next Century Rebar, LLC*, 115 F.4th 480, 488 (6th Cir. 2024) (alteration in original) (quoting *Pineda v. Hamilton Cnty.*, 977 F.3d 483, 491 (6th Cir. 2020)). "[W]hen the moving party

bears the burden of proof [at trial], their initial summary judgment burden is higher in that [they] must show that the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Id*. at 489 (quoting *Cockrel v. Shelby Cnty. Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001) (internal quotation marks omitted). When the moving party does not bear the burden of proof at trial, they may meet their initial burden at summary judgment by "either: (1) submitting 'affirmative evidence that negates an essential element of the nonmoving party's claim'; or (2) demonstrating 'to the court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim.'" *Kava v. Peters*, 450 F. App'x 470, 473 (6th Cir. 2011) (quoting *Celotex Corp. v. Catrett,* 477 U.S. 317, 331 (1986) (Brennan, J., dissenting)).The nonmovant must then present "sufficient evidence from which a jury could reasonably find in [their] favor." *Davis v. Sig Sauer, Inc.*, 126 F.4th 1213, 1230 (6th Cir. 2025) (cleaned up).

Plaintiff—the non-moving party—bears the burden of proof at trial. The moving parties, Defendants, must either (1) demonstrate that Plaintiff cannot present evidence to show an essential element of his claim or (2) present evidence that negates an essential element of Plaintiff's claim.

Plaintiff has not responded to the summary judgment motions filed by Defendants. "The fact that there has been no response to a summary judgment motion does not, of course, mean that the motion is to be granted automatically." *Champion v. Artuz*, 76 F.3d 483, 486 (2d Cir. 1996). The trial court is required to "intelligently and carefully review the legitimacy of such an unresponded-to motion" and cannot "blithely accept the conclusions argued in the motion." *Guarino v. Brookfield Township Trustees*, 980 F.2d 399, 407 (6th Cir. 1992). However, when a motion for summary judgment is unopposed, "[n]othing in either the Rules or case law supports

an argument that the trial court must conduct its own probing investigation of the record" to demonstrate the existence of genuine issues of material fact. *Id*. at 405.

As set forth below, the Court finds that Defendants have demonstrated that there are no genuine issues of material fact and that they are entitled to judgment as a matter of law.

## III. Defendants are Entitled to Judgment as a Matter of Law on Plaintiff's Eighth Amendment Claim

Plaintiff claims that Defendants Jensen, Piggott, and Barna used excessive force during their escort of Plaintiff from his cell to the property room. The Eighth Amendment prohibits conditions of confinement which, although not physically barbarous, "involve the unnecessary and wanton infliction of pain." *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981) (quoting *Gregg v. Georgia*, 428 U.S. 153, 183 (1976)). Among unnecessary and wanton inflictions of pain are those that are "totally without penological justification." *Id.* However, not every shove or restraint gives rise to a constitutional violation. *Parrish v. Johnson*, 800 F.2d 600, 604 (6th Cir. 1986); *see also Hudson v. McMillian*, 503 U.S. 1, 9 (1992). "On occasion, '[t]he maintenance of prison security and discipline may require that inmates be subjected to physical contact actionable as assault under common law.'" *Cordell v. McKinney*, 759 F.3d 573, 580 (6th Cir. 2014) (quoting *Combs v. Wilkinson*, 315 F.3d 548, 556 (6th Cir. 2002)). Prison officials nonetheless violate the Eighth Amendment when their "offending conduct reflects an unnecessary and wanton infliction of pain." *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (quoting *Pelfrey v. Chambers*, 43 F.3d 1034, 1037 (6th Cir. 1995)); *Bailey v. Golladay*, 421 F. App'x 579, 582 (6th Cir. 2011).

There is a subjective component and an objective component to Eighth Amendment claims. *Santiago v. Ringle*, 734 F.3d 585, 590 (6th Cir. 2013) (citing *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001)). First, "[t]he subjective component focuses on the state of mind of the prison officials." *Williams*, 631 F.3d at 383. Courts ask "whether force was applied in a good-faith effort

to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 7. Second, "[t]he objective component requires the pain inflicted to be 'sufficiently serious.'" *Williams*, 631 F.3d at 383 (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). The objective component requires a "contextual" investigation that is "responsive to 'contemporary standards of decency.'" *Hudson*, 503 U.S. at 8 (quoting *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)). Although the extent of a prisoner's injury may help determine the amount of force used by the prison official, it is not dispositive of whether an Eighth Amendment violation has occurred. *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010). "When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated . . . [w]hether or not significant injury is evident." *Hudson*, 503 U.S. at 9.

If the record before the Court consisted solely of Plaintiff's sworn testimony and Defendant Piggott's verified declaration, genuine issues of material fact would preclude summary judgment. But, the record also includes a video recording of the incident and the findings of an ALJ from a Class I misconduct proceeding. The video reveals that Plaintiff's account is a work of pure fiction. The ALJ's findings simply reinforce what the video reveals.

The video blatantly contradicts and utterly discredits Plaintiff's allegations. The video depicts Plaintiff offering escalating physical resistance to Defendants. Defendants respond with progressively more severe interventions to secure Plaintiff's compliance. But the interventions appeared to go no further than was necessary to secure Plaintiff's compliance. Plaintiff was not beaten, attacked, subject to flurries of punches or blows, hit, stuck, or choked.

There are virtually no "relevant gaps or uncertainties left by the video" that would permit the Court to view the incident "in the light most favorable to [Plaintiff]." *Nash v. Bryce*, 157 F.4th 436, 453 (6th Cir. 2025) (quoting *LaPlante v. City of Battle Creek, Mich.*, 30 F.4th 572,

578 (6th Cir. 2022)) (internal quotation marks omitted). Nonetheless, Plaintiff does also mention arm and leg bending. But there is no question that Plaintiff strenuously and consistently resisted Defendants' effort to escort Plaintiff to the property room. Plaintiff has offered no evidence to show that Defendants applied force "maliciously and sadistically." Based on the video, no reasonable jury could believe Plaintiff. No reasonable jury could find malice and sadistic intent here. To the contrary, the evidence before the Court supports only one reasonable determination: that force was applied in a good-faith effort to maintain or restore discipline.

Accordingly, there are no genuine issues of material fact regarding Plaintiff's Eighth Amendment claims against Defendants Jensen, Piggott, and Barna. They are entitled to judgment as a matter of law.

## Conclusion

For the reasons stated above, the Court will grant Defendants' motion for summary judgment. The Court will enter an order and judgment consistent with this opinion.

Dated: October 13, 2026

/s/ Ray Kent
Ray Kent
United States Magistrate Judge